Learned, P. J.
The complaint sets up that the plaintiffs, in November 1874, authorized Henry A. Mann, their treasurer, to borrow on the credit of the county, a sum amounting in fact to $20,800.44; that under this authority he borrowed some $188,000, and issued therefor to sundry persons, defendants in this action, notes uniform in style and form on behalf of the county; that these notes were held severally by the defendants, and that suits had been commenced on some of them ; that in the belief of plaintiffs, only $20,800.44 of these notes were legal claims against the county ; and that the plaintiffs were ready to pay that amount; that the plaintiffs did not know who were the rightful owners of the legal debt; that it would require a long examination to ascertain which of the claims were valid ; that the invalid notes are not distinguishable on their face from the valid notes, and that lapse *464 of time would make it difficult to determine which were valid.
One of the defendants demurred, and when the case came before us on the demurrer it seemed to us that the defendants had severally distinct causes of action, triable at law and by a jury. That the several claims of the defendants were entirely independent, one of the other ; and that a recovery by one defendant on his claim in no way interfered with or affected the claim of another defendant on his claim. It seemed to us that a debtor had no right to bring all his separate and independent creditors into court in one action to deprive them of a jury trial and to compel the legal creditors to await the decision for, or against, those who might prove to be no creditors at all. Nor did we see that the fact that the plaintiffs were a muncipal corporation gave them any further rights, in this respect, than would be possessed by any private individual whose agent, authorized to issue $20,000 of notes, had issued to tona fide holders for value, notes of his principal to the amount of $130,000.
It was, however, held that the demurrer was not well taken. And it becomes important therefore, at this time, when the case comes before us on appeal from the judgment of the special term, to ascertain what principles were necessarily laid down by the court in its decision. As a demurrer admits none of the legal conclusions alleged in the pleading demurred to, but only the facts legally pleaded, we are confined to those facts in the complaint, and to the decision that those facts constitute a cause of action. Since, too, the constitution retains the trial by jury in all cases in which it existed, and since this action takes away from the defendants such a trial, as a matter of right, it necessarily follows that this action must have been decided to be one which, before the adoption of the constitution, might have been brought in the court of chancery.
*465 The court of chancery allowed a bill of peace where there was one general right to be established against a great number of persons (2 Story, § 854). That is not this case ; because here the plaintiff insists upon different and diverse rights against the several defendants admitting the claims of some and denying those of others. It also allowed a bill of peace where there had been several trials at law (§ 859). That is not the present case, and these are the only classes of bills of peace (§ 860). So a bill quia timet, was brought to prevent anticipated wrongs, and for the protection of specific property (§ 826). The present is hardly that case.
It remains, therefore, that this action must have been considered to be a bill of interpleader. And the peculiarity of that action is, that two or more parties claim the same thing or money, and that the plaintiff does not know to whom that thing or money is due or owing (1 Story Eq. 806). And therefore it must be that the court of appeals held, on the allegations of the complaint, that these defendants severally claimed the same thing or money, viz., the $20,800.44, and that the plaintiffs, honestly desiring to pay that money, did not know to whom to pay it. A plaintiff who claims any part of the thing in controversy while the defendants' claim the whole, is not allowed to bring an action of interpleader. If, then, the facts set forth in the complaint had been deemed by that court to show a possible liability of the plaintiffs for any nore than the $20,800.44, clearly the complaint would not have shown a cause of action. For if the plaintiffs on the complaint showed that they owed, or might by any possibility owe, more that the $20,800.44, then the court would not have overruled the demurrer, and would not have permitted plaintiffs, who owed $130,000, to delay payment by offering to pay $20,000, and by asking the defendants to litigate in regard to that amount.
*466 We feel therefore compelled to say that it follows . necessarily from the decision of the court of appeals ] that, upon the facts stated in the complaint the de- / fendants are liable only for $20,800.44. The complaint did not aver that the defendants had not given full value for the notes. If the defendants, or any of them, had not severally given full value for the notes, that fact would have been a good defense at law for such defendants as had not given value, and there would have been no need of a bill of interpleader. So too, if the defendants, or any of them, had had actual notice of an over exercise of power on the part of Mr. Mann, that too would be to plaintiffs as a defense equally available for such defendants as a defense in law, as it would be a ground for relief in equity. Therefore, from these principles, and from the silence of the complaint, we may assume that the decision, sustaining the complaint, did not rest on the ground of want of consideration for the notes, or on actual notice of any defect of power in Mr. Mann in the case of any defendant.
The principle then which we understand to be laid down is this : that where a municipal corporation lawfully authorizes one of its officers to issue obligations of that corporation to a certain definite amount, and such officer issues such obligations to a larger amount, the corporation is liable only to the extent of the amount which it authorized, even though all the obligations be in hands of bona fide holders for value. And it would seem also to follow that the obligations which are first issued, to the extent authorized, are those which are valid, for no other test can be suggested to determine which are valid, and which are invalid. It is true that no person who should take the obligations subsequently issued by such officer, would have any means of ascertaining whether or not the limit had been exceeded. The statements of the officer to the effect that the limit had not been exceeded, would be no *467 more binding on the corporation than would the act of the officer in the issue. And therefore, under this principle, every person taking such obligations takes them at a risk from which no inquiry will protect. And if the officer has exceeded the amount to which the instructions of his principal limited him, the principal is not liable. The defendants on this appeal cite many cases which, as they claim, establish firmly the contrary doctrine. But we feel, ourselves to be concluded in this case by the decision of the court of appeals on the demurrer, to the doctrine that the plaintiffs are liable only to the extent of the $20,800.44, as to which sum that courtmnst have/ held that the defendants were practically to interplead.
Much of the evidence seems to have been intended to show that some of the notes were .issued in renewal of prior indebtednesses. But so far as such evidence goes to the point of showing that the defendants parted with value for their notes, it appears to be of little consequence to the final result. We have already seen that the plaintiffs do not claim that any defendant, did not pay full value for the notes issued to him. It would seem to make little difference, under the rule which we understand, and which the learned justice who tried this action understood, to have been settled by the decision above mentioned, whether a defendant parted with cash, or with some old claim as a consideration for the note which he now holds.
The two resolutions under authority of which Mr. Mann issued the notes in question, are as follows:
“ Resolved, That the county treasurer be hereby authorized to borrow on the credit of the county $8,000, for one year, at a rate not exceeding 7 per cent.”
“ Resolved, That the county treasurer be directed to procure an extension of the time of payment of such portion of the town bounty debt, accrued prior to Feb *468 ruary 15, 1875, as the several towns owing the same may desire to have extended,” &c.
It appears that the phrase “ town bounty debt” means a certain kind of county liability. The plaintiffs aver, that in November, 1874, that kind of county liability amounted to $13,800.44. They admit their liability on the notes held by the defendants to the extent of $30,800.44, and therefore they admit that $13,800.44 of these notes were lawfully issued under the second resolution above set forth.. This seems, by the plaintiffs’ own admission, to dispose of one objection which they take on their argument, viz.: That the contracting one debt and paying off another was not the procuring of an extension. Whether this would have been a valid defense to an action on the notes we need not inquire, because the plaintiffs admit, that at least $12,800.44 of valid notes were issued under the authority of that resolution ; and therefore they admit that the resolution did authorize Mr. Mann to issue some notes, and borrow some money, for which they are liable.
It is evidently an important part of the plaintiffs’ case to show affirmatively that they owed for the “town bounty debt” not more than $12,800.44 on November 10, 1874. For as the resolution secondly above quoted does not of itself determine the amount owing, the plaintiff’s must prove what that amount was.
It is true that we do not see how it was possible for the persons with whom Mr. Mann dealt, under the authority of that resolution, to ascertain how much that “town bounty debt” was. No inquiry which they could make, unless they obtained a vote of the supervisors on the subject, would be conclusive. Nor could they in any way ascertain whether Mr. Mann had already issued as many obligations as the resolution authorized. But these resolutions are set forth in the complaint, and therefore this difficulty must have *469 been apparent to the court of appeals when they decided the demurer, and was not thought to be of any weight by that court. But assuming that it was the duty of those who lent money to the county to ascertain this fact, at any rate in the sustaining of this case the plaintiffs must show that the county debt did not exceed the amount which they allege.
It appears that after the passing of these two resolutions, and on or after February, 15, 1875, notes were issued by Mr. Mann, in the form set forth in the complaint, to several of the defendants, for cash borrowed at the time, amounting in the aggregate to $32,104. And also that about February 15, 1875, notes were issued by him in the same form to several of the defendants in the place of former notes (or, so-called bonds) coming due that day, amounting to $105,727. (One small note of this amount, dated in 1874, must be excepted.)
On tracing back the history of the liabilities thus renewed, as the same are stated in the testimony and in the schedule annexed to the decision, we find that there came due in 1875, of notes and so-called bonds, $104,490, in 1874, $94,690, in 1873, $82,396, and so on to 1865, when there came due $3,200. "And the notes issued in 1875 generally represent notes or bonds issued as early as 1870, with the accrued interest. Some of them represent obligations issued as early as 1864, and continued by renewals at the original amount or increased. ■ The testimony of many of the defendants, shows that, after lending their money on notes or bonds, they permitted the interest to be added and took new notes.
The plaintiffs, to show that this debt of the county, called town bounty debt, did not exceed the $12,800.44 urge that the statement of the treasurer to the supervisors, made in 1866, showed county bounty debt, $165,327.29, town bounty debt, $348,466, making, with *470 interest, &c., in 1867, a total of $553,445.74 ; as is found in the decision. This amount the plaintiffs assert, and the learned justice found, had all been paid, except the aforesaid balance, $12,800.44. Now we have the fact, that, as early as 1866, notes and so-called bonds to the amount of $23,278 had been issued, the renewals of:which are held by these defendants. These notes and bonds must have been a part of the indebtedness then existing, and these have not been paid. They have been only renewed from time to time. So that we have here, at least, the amount of $23,278 of debt existing in 1867, which has not been paid, but which is now represented by claims held by these defendants. Nor were these the only notes, or so-called bonds, which had been thus issued. But notes and so-called bonds, to a much larger amount, were issued from time to time. And it may have been noticed that the old notes or so-called bonds, surrendered by the holders as the consideration for renewal notes, were used as vouchers by Mr. Mann in his accounting with the plaintiffs. And therefore, so far as the form of the instruments is concerned, they must have been ratified by the plaintiffs, by their knowledge that such instruments had been issued, and their allowance of the same on the several accountings by Mr. Mann.
But we have further to inquire, what evidence is given that the debt of 1867 (assuming for the present that it was no more than is above stated) has been paid by the plaintiffs % It can readily be seen that the mere .fact that the plaintiffs raised such an amount of money, and even the fact that Mr. Mann paid it out on what purported to be county liabilities, would not .show that the debt in 1867 had been reduced. It is apparent that, in some way, the money has been lost, through Mr. Mann, and through his issue of securities to a larger amount than he was directed to issue. Now let us suppose, by way of illustration, that the afore *471 said debt of 1867 was all valid ; that in that year Mr. Mann improperly issued $10,000 of securities, and received the money therefor; that in 1868, when he received money from the county, be paid off this $10,000 of improper issues, leaving of the unquestionable debt $10,000 more unpaid than the plaintiffs supposed, or than appeared in his account. This $10,000 of unquestionable debt he might renew. A similar proceeding might take place the next year; and thus, by paying off the debts improperly contracted with the money put in his hands by the county, the unquestionable debt of the county might be continued unpaid by successive renewals. If Mr. Mann paid in any year say $10,000 of notes issued by him the previous year in excess of his duty, such notes were not distinguishable from other notes,properly issued, and were equally good to him as vouchers. So that it seems that the mere fact that the plaintiffs placed money from year to year in Mr. Mann’s hands to apply on the debt of the county, and that he in fact applied it' on debts purporting and appearing to be debts of the county, without something more, does not show a payment of the county debt. For it is admitted that there were, during all this time, to a greater or less extent, notes or bonds undistinguishable in form from those notes or bonds which were the undisputed debt of the county.
The argument of the plaintiff is, that assuming the amount of the town and county debt above specified as a basis, “and adding interest and deducting therefrom the amounts raised year by year, a computation demonstrates that the whole amount of town and county debt due in February, 1875, had been provided for to within less than $20,000. ” This argument assumes the contrary of what has just been shown to have been at least possible. It assumes that Mr. Mann, in paying out the county money, always applied it on *472 the just liabilities of the county, and never on the liabilities improperly created by himself; and also that he never, in any way, applied it to his own use.
The evidence thus relied upon by the plaintiffs to show the actual reduction of the debt, as alleged to exist in.1866-7, consists of the reports of the treasurer, made to the supervisors from time to time, and printed in their proceedings. And it appears from the arguments of the respective counsel, from the opinion of the learned justice and from an examination of the evidence, that the conclusion reached, as to the amount of the county debt in November, 1874, is obtained, not by proof of actual payments, but by proof of the succes sive reports made by the plaintiffs’ treasurer to themselves, and by the same reports as published in their proceedings.
Now, even if we were to assume that these reports were prima facie evidence that the treasurer had done that which he said he had done, we find this difficulty. The treasurer testifies that in fact he did not pay the debt of the county which he reported that he had paid. Thus, in speaking of certain county-house securities, he says : “I did not pay anything on those bonds in any other way than to give new obligations, unless I paid the money and they paid it back to me. If they had wanted I should count the money out to them, I should have done so.” And again, in folios next following, he is asked whether it meant actual payment, where he credited himself in his reports with a certain amount paid on bounty debt bonds, &c. He says, I charged myself with the amount that had been raised; that came to my hands for that purpose. And again he says, “I charged myself (meaning, evidently, credited) with the amount of bonds paid that year.” He is asked: “ Paid how T ’ And he answers : “ Paid either in cash, or extension or borrowing the money of *473 some of the parties. The credit I gave myself was the credit that represents what I charged myself for the amount of money raised for the bounty debt that year. It was an arbitrary credit, without any reference to what 1 actually paid out for the county.”
To illustrate: we may take the case of F. T. Powell, inasmuch' as special reference is made in one of the briefs to that case. He loaned, February 15, 1867, to the county $1,350, and took two notes therefor. The next year he took a bond for $1,700, signed by the chairman of the supervisors and the treasurer. This was the principal and interest, and an additional sum of money. He advanced again $325, February 15,1869, and took a note. February 15,1870, he gave up these securities, and took a note for $2,485, advancing, it would seem, about $200. February 15, 1871, he gave up this and took a note for $2,700, advancing $41.05. February 15, 1872, he tooÉ a new note for $2,900, advancing $11. February 15, 1873, he took a new note for $3,100, receiving $3, part of the interest. February 15, 1874, he took a new note for $3,000, receiving $100 of the principal and the interest. And February 15, 1875, he took another note of $3,000, receiving the interest.
Now it does not seem to be disputed that at least the bond of $1,700, issued February 15, 1868, was a valid debt against the county. How has that ever been paid % If the money for its payment was raised by the plaintiffs, and entrusted to their treasurer, and if he, instead of paying this bond, used the money in other ways, and gave his official note in renewal of the bond; can it be said that the county debt has been thus paid to the extent of $1,700 % Mr. Mann gave in the place of it a note in form similar to other notes given by him, the validity of which is admitted by the plaintiffs, and at the present time Howell holds a note not distinguishable on its face from valid notes of the county, as the *474 complaint avers. It can hardly be asserted then, that in surrendering the bond and taking the note Powell was knowingly exchanging the liability of the county for the personal liability of Mr. Mann.
Now this case of Powell’s is not exceptional. And taken with the others it shows that Mr. Mann did not in fact pay the county debt, in the manner and to the extent, which his reports state. The learned justice finds that Mr. Mann used the notes which had been renewed, as vouchers. And therefore any presumptive evidence which the reports might make for the plaintiffs, is overthrown by the proofs that the payments reported to have been made, had not been made in fact. How then can the conólusion be sustained that the county debt in November, 1874, was only $12,800.44 %
It is to be observed that this is something more than the mere question whether Powell (to take that case) has a valid claim. Powell’s claim might be lost by the statute of limitations, or in other ways. If lost by the statute of limitations, that fact would not show that the plaintiffs had paid it, and the point we are now examining is this : assuming (for the sake of the argument) the debt of the county at $553,445.74 in 1867, the plaintiffs claim to show by computations that it was reduced by payments to $12,800.44 in 1874. Now is there evidence of payments to the amount necessary to make that reduction ? And it is only by alleged payments that the plaintiffs attempt to prove such reduction. Such payments are claimed to be shown by the treasurer’s reports. And it now appears that he had not paid when he reported that he had paid. If every debt which the county owed in 1867 had since that time been barred by the statute of limitations, this fact would thus be shown to be false, xf The situation is this. A debtor finds numerous notes outstanding, made by his agent, but purporting to *475 bind the principal. He admits that when they were made, he owed a certain amount, and that the agent was authorized to make notes to that extent only, and he brings a bill of interpleader. To show that he owed only that certain amount, he shows that seven years previously his agent reported to him that his debt was a much greater sum; that every year he has put money into his agent’s hands to pay off the debt, and that the agent has annually reported that such payments had been made. If made, they reduced the debt to the amount admitted. But it is proved that in fact the agent did not always thus apply the money entrusted to him, but often renewed the liabilities of the principal, instead of paying them. Can it be held, as established, that the principal’s debt has been in fact reduced by payment to the amount which he admits ? It seems to us that the principal, in such a case, has failed to establish the reduction of the debt. The plaintiffs might have shown who the perscms were who held the debt of the county in 1866-7, and how much they severally held, and then they might have shown (if the fact were so) that the creditors had all been paid excepting to the amount named: But as the case now stands, it appears that the money intended for the payment of the debt was not always used for that purpose. It seems to us, therefore, that the plaintiffs failed to establish the allegation that in November, 1874, the debt was only $12,800.44. Wherefore judgment should be reversed upon the facts.,/